UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Tiffany O.,[1]

              Plaintiff,                    Court File No.  21-cv-1033 (KMM)(LIB)

       v.                           **REPORT & RECOMMENDATION**

Kilolo Kijakazi,
Acting Commissioner of Social Security,

              Defendant.

Plaintiff, Tiffany O. (hereinafter "Plaintiff"), seeks judicial review of the decision of the Acting Commissioner of Social Security ("Defendant") denying her application for disability benefits.  This matter has been referred to the undersigned United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1.  This Court has jurisdiction over the claims pursuant to 42 U.S.C. § 405(g).

Both parties submitted cross-motions for summary judgment, and the Court took the matter under advisement on the parties' written submissions.  [Docket Nos. 20, 22].  For the reasons discussed herein, the undersigned recommends that Plaintiff's Motion for Summary Judgment, [Docket No. 20], be **DENIED**, and that Defendant's Motion for Summary Judgment, [Docket No. 22], be **GRANTED**.

---

[1] This District has adopted the policy of using only the first name and last initial of any nongovernmental parties in Social Security opinions such as the present Report and Recommendation. Accordingly, where the Court refers to Plaintiff by her name only her first name and last initial are provided.

## I.  Procedural History

On April 2, 2018, Plaintiff filed a Title II application for supplemental security income. (Tr. 15, 256-262).[2]  Plaintiff alleged that her disability began on April 2, 2018,[3] and that her disability was caused by impairments of "traumatic brain injury," "depression," "anxiety," "ADHD," "migraines," "bulging discs," "arthritis," "hip/knee/both ankle problems," and "ODD." (Tr. 15, 104).  The Acting Commissioner initially denied Plaintiff's present claims on December 4, 2018, and again, upon reconsideration, on February 27, 2019.  (Tr. 142-152).  On March 14, 2019, Plaintiff filed a written request for a hearing before an Administrative Law Judge.  (Tr. 154-156).

Administrative Law Judge Richard Thrasher (hereinafter "ALJ") conducted a hearing on July 14, 2020.[4]  (Tr. 16).  Plaintiff testified at the hearing, along with independent vocational expert, Mitchell Norman.  (Tr. 16).  On August 25, 2020, the ALJ issued a decision denying Plaintiff's request for supplemental security income.  (Tr. 12-33).  The ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act.  (Tr. 29).

Thereafter, Plaintiff sought review of the decision by the Appeals Council.  (Tr. 1-6). Subsequently, on February 22, 2021, the Appeals Council denied Plaintiff's request for review. (Tr. 1).  Accordingly, the ALJ's decision became the final decision of the Acting Commissioner. See 20 C.F.R. §§ 404.981, 416.1481.

---

[2] Throughout this Order, the Court refers to the Administrative Record, [Docket No. 19], by the abbreviation "Tr." The Administrative Record is consecutively paginated across 61 exhibits. (See Administrative Record [Docket No. 19). Where the Court cites to the Administrative Record, it refers to the page numbers found in the bottom-right corner of these exhibits.

[3] Plaintiff initially alleged that her disability began on January 1, 1989.  (Tr. 15).  However, at the April 3, 2020, administrative hearing, Plaintiff amended her alleged onset date to April 2, 2018.  (Tr. 15).

[4] The ALJ initially conducted a telephone hearing on April 3, 2020; however, because it was discovered that the remote hearing recording failed, the ALJ rescheduled an entirely new telephone hearing on July 14, 2020.  (Tr. 15-16).

On April 22, 2021, Plaintiff filed the present action. (Compl. [Docket No. 1]).  Thereafter, both parties submitted cross-motions for summary judgment, and the Court took the matter under advisement on the written submissions.  [Docket Nos. 20, 22].

## II.  Standards of Review

### A.  Administrative Law Judge's Five-Step Analysis

If a claimant's initial application for disability benefits is denied, she may request reconsideration of the decision.  20 C.F.R. §§ 404.907–404.909.  A claimant who is dissatisfied with the reconsidered decision may then obtain administrative review by an administrative law judge ("ALJ").  42 U.S.C. § 405(b)(1); 20 C.F.R. § 404.929.

To determine the existence and extent of a claimant's disability, the ALJ must follow a five-step sequential analysis.  This analysis requires the ALJ to make a series of factual findings regarding the claimant's impairments, residual functional capacity, age, education, and work experience.  See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); see also Locher v. Sullivan, 968 F.2d 725, 727 (8th Cir. 1992).  The Eighth Circuit has described this five-step process as follows:

> The Commissioner of Social Security must evaluate: (1) whether the claimant is presently engaged in a substantial gainful activity; (2) whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations; (4) whether the claimant has the residual functional capacity to perform his or her past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform.

Dixon v. Barnhart, 353 F.3d 602, 605 (8th Cir. 2003).

### B.  Appeals Council Review

If the claimant is dissatisfied with the ALJ's decision, she may request review by the Appeals Council; however, the Appeals Council need not grant that request for review. See 20

C.F.R. §§ 404.967–404.982.  The decision of the Appeals Council (or, if the request for review is denied by the Appeals Council, then the decision of the ALJ) is final and binding upon the claimant, unless the matter is appealed to federal court within sixty days after notice of the Appeals Council's action.  See 42 U.S.C. § 405(g); 20 C.F.R. § 404.981.  In this case, the Appeals Council declined to review the ALJ's decision finding that Plaintiff was not disabled.  (Tr. 1-6).

### C.  Judicial Review

Judicial review of the administrative decision generally proceeds by considering the decision of the ALJ at each of the five steps.  However, judicial review of the Commissioner's decision to deny disability benefits is constrained to a determination of whether the decision is supported by substantial evidence in the record, as a whole.  42 U.S.C. § 405(g); Bradley v. Astrue, 528 F.3d 1113, 1115 (8th Cir. 2008); Tellez v. Barnhart, 403 F.3d 953, 956 (8th Cir. 2005); Buckner v. Apfel, 213 F.3d 1006, 1012 (8th Cir. 2000) ("We may reverse and remand findings of the Commissioner only when such findings are not supported by substantial evidence on the record as a whole.").  "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Coleman v. Astrue, 498 F.3d 767, 770 (8th Cir. 2007); Buckner, 213 F.3d at 1012 (quoting Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000)).

In reviewing the record for substantial evidence, the Court may not substitute its own judgment or findings of fact for that of the ALJ.  Hilkemeyer v. Barnhart, 380 F.3d 441, 445 (8th Cir. 2004).  The possibility that the Court could draw two inconsistent conclusions from the same record does not prevent a particular finding from being supported by substantial evidence.  Culbertson v. Shalala, 30 F.3d 934, 939 (8th Cir. 1994).  The Court should not reverse the

Commissioner's finding merely because evidence may exist in the administrative record to support the opposite conclusion. Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993).

After balancing the evidence, if it is possible to reach two inconsistent positions from the evidence and one of those positions represents the Commissioner's decision, the court must affirm the decision. Robinson, 956 F.2d at 838. Thus, the court will not reverse the ALJ's "denial of benefits so long as the ALJ's decision falls within the 'available zone of choice.'" Bradley, 528 F.3d at 1115. The decision of the ALJ "is not outside the 'zone of choice' simply because [the Court] might have reached a different conclusion had [it] been the initial finder of fact." Id. "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." Medhaug v. Astrue, 578 F.3d 805, 813 (8th Cir. 2009) (quotation omitted).

The claimant bears the burden under the Social Security Act of proving that she is disabled. See 20 C.F.R. § 404.1512(a); Whitman v. Colvin, 762 F.3d 701, 705 (8th Cir. 2014). Once the claimant has demonstrated she cannot perform prior work due to a disability, the burden then shifts to the Commissioner to show that the claimant retains the residual functional capacity ("RFC") to engage in some other substantial, gainful activity. Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005).

**III. Decision Under Review**

The ALJ made the following determinations during the five-step disability evaluation process. At step one, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since April 2, 2018. (Tr. 18). This finding is not in dispute. The Court will refer to the period of time between the date Plaintiff last engaged in substantial gainful activity and the date

through which the ALJ issued his decision denying Plaintiff's request for supplemental security income as "the adjudicated period."

At step two, the ALJ concluded that Plaintiff had the following severe impairments: stable and minor degenerative disc disease of the lumbosacral spine at L5-S1, with no central canal or foraminal narrowing/stenosis; stable minor disc bulge of the cervical spine at C5-6 with spondylosis, but otherwise with no significant central canal or foraminal narrowing/stenosis; major depressive disorder/major depressive disorder, single episode, unspecified/depressive disorder, not otherwise specified (NOS); attention deficit hyperactivity disorder (ADHD), combined type; and posttraumatic stress disorder (PTSD), chronic (20 CFR 4516.920(c)). (Tr. 18). These findings are in dispute only with respect to the ALJ not including her traumatic brain injury diagnosis as a severe impairment.

At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 21). Specifically, the ALJ found that Plaintiff did not have any impairment or combination of impairments which met or medically equaled listings 1.04, 12.04, 12.11, or 12.15. (Tr. 21-24). Plaintiff does not challenge the ALJ's findings at step three.

At step four, the ALJ made the following RFC determination:

[T]he claimant has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) except with frequent climbing of ramps and stairs; occasional climbing of ladders/ropes/scaffolds; frequent balancing, stooping, kneeling, crouching and crawling; frequent reaching overhead bilaterally; occasional exposure to unprotected heights and unprotected moving machine parts; limited to simple, routine and repetitive tasks; not able to work at a fast production rate pace, such as an assembly line worker, but can perform goal oriented work, such as a cleaner; changes in routine work duties limited to no more than occasional on a monthly basis; limited to brief and superficial contact with coworkers and supervisors, defined as no more than occasional contact that is short and succinct

in duration that involves no more than cursory and passing contact or exchanges in work that is not primarily team-oriented; and no public contact.

(Tr. 24). Plaintiff challenges this RFC determination made by the ALJ.

In making this RFC determination, the ALJ, considering the record as a whole, including Plaintiff's testimony that she is unable to work due to ongoing pain, and symptoms of depression and ADHD, found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," and therefore, "reduced her residual functional capacity accordingly." (Tr. 24). However, the ALJ also found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in [the ALJ's] decision." (Tr. 24-25). Plaintiff challenges this credibility finding by the ALJ.

Based on that RFC determination, the ALJ found that Plaintiff was unable to perform any past relevant work. (Tr. 27). Plaintiff does not challenge this finding.

Finally, at step five, the ALJ concluded that "[c]onsidering the [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [Plaintiff] can perform." (Tr. 28). Relying upon testimony from independent vocational expert Mitchell Norman, ("IVE Norman"), the ALJ specifically found that, among the representative occupations, Plaintiff would be able to perform the requirements of industrial sweeper (Dictionary of Occupational Titles No. 389.683-010) of which there are 168,000 positions in the national economy; dryer attendant (Dictionary of Occupational Titles No. 581.686-018) of which there are 16,700 positions in the national economy; and hospital cleaner (Dictionary of Occupational Titles No. 323.687-010) of which there are 125,000 positions in the national economy. (Tr. 28). Other than an implicit challenge based on Plaintiff's other challenges, Plaintiff does not directly challenge the ALJ's findings at step five.

Accordingly, the ALJ found that Plaintiff was not under a disability, as that term is defined by the Social Security Act, at any time during the adjudicated period.  (Tr. 29).

## IV. Analysis

Plaintiff asserts one general overarching issue on her appeal of the ALJ's decision: whether there is substantial evidence on the record, as a whole, to support the ALJ's RFC determination. (Plf.'s Mem., [Docket No. 21], at pp. 15-24).  In support, Plaintiff first asserts that the ALJ erred in finding that Plaintiff's traumatic brain injury was not a severe impairment.  (Id. at pp. 11-14). Second, Plaintiff asserts that the ALJ erred by improperly assessing the weight given to Dr. Carrie Parente's opinion.  (Id. at pp. 18-24).

Although presented separately, at their core, each of Plaintiff's arguments simply ask this Court to reweigh the medical evidence and to come to a different conclusion than the ALJ.

### A.  Plaintiff's Traumatic Brain Injury

As noted above, Plaintiff argues that the ALJ erred by not finding that Plaintiff's traumatic brain injury ("TBI") was severe and disabling at step two of the sequential evaluation.  Instead, Plaintiff asserts that certain evidence in the record supported a current, severe TBI diagnosis.

As previously discussed, the Commissioner uses an eight-step evaluation to determine if a claimant is disabled.  See Simmons v. Massanari, 264 F.3d 751, 754 (8th Cir. 2001); 20 C.F.R. § 416.920(a)(4).  Step two of the evaluation states that a claimant is not disabled if her impairments are not "severe."  Simmons, 264 F.3d at 754; 20 C.F.R. § 416.920(a)(4).  An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities.  See Bowen v. Yuckert, 482 U.S. 137 at 153 (1987); Id. at 158 (O'Connor, J., concurring); 20 C.F.R. § 404.1521(a).  If the impairment would have no more than a minimal effect on the claimant's ability to work, then it does not satisfy the

requirement of step two. Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007). It is the claimant's burden to establish that her impairment or combination of impairments are severe. Mittlestedt v. Apfel, 204 F.3d 847, 852 (8th Cir. 2000). Severity is not an onerous requirement for the claimant to meet, see Hudson v. Bowen, 870 F.2d 1392, 1395 (8th Cir. 1989), but it is also not a toothless standard, and courts have upheld on numerous occasions the Commissioner's finding that a claimant failed to make this showing. See, e.g., Page, 484 F.3d at 1043-44; Dixon v. Barnhart, 353 F.3d 602, 605 (8th Cir. 2003); Simmons, 264 F.3d at 755; Gwathney v. Chater, 104 F.3d 1043, 1045 (8th Cir. 1997); Nguyen v. Chater, 75 F.3d 429, 431 (8th Cir. 1996).

Plaintiff first asserts that the ALJ improperly considered a state agency psychological consultant's November 2018, opinion (the "November 2018 Opinion") as evidence in and of itself that Plaintiff did not currently have a severe TBI impairment. The Court finds this argument unpersuasive.

The Court's review of the record shows that the ALJ considered the entire medical record to find that Plaintiff's TBI was not a severe impairment at step two of the sequential process. Specifically, the ALJ found that, despite a prior ALJ decision in January 2014, which held, among other things, that Plaintiff's TBI was a severe impairment, the current record did not support the same finding because there lacked a supported neurocognitive disorder diagnosis, and any TBI diagnosis in the record was based solely on the reported history provided by Plaintiff. (Tr. 20). In support, the ALJ noted that, in the November 2018 Opinion, Dr. Dustin Warner did not find evidence to support a neurocognitive diagnosis based on Plaintiff's full-scale IQ findings, "top end of the average" scores in other intelligence indices, and "average to high average range" scores in both the Wechsler Adult Intelligence Scale-Fourth edition (WAIS-IV) and the Wechsler Memory Scale-Fourth edition (WMS-IV). (Tr. 20, 422-427). The ALJ's analysis did not end here. The

9

ALJ went on to discuss and cite treatment notes from a May 2018, consultation with neurologist, Dr. Kevin Brown, (the "May 2018 Consultation"), whom Plaintiff sought for reported TBI and headaches.  The ALJ noted that Dr. Brown's diagnosis of TBI was "by history," and his recommendation that Plaintiff undergo an updated neuropsychological evaluation, among other things, was never followed through by Plaintiff.  (Tr. 20, 453-454); see Papesh v. Colvin, 786 F.3d 1126, 1132 (8th Cir. 2015) (holding that an ALJ may properly choose not to give controlling weight to the opinion of a treating physician opinion when it is based solely on a claimant's subjective reports); see also Wagner v. Astrue, 499 F.3d 842, 849 (8th Cir. 2007) (quoting Guilliams v. Barnhart, 393 F.3d 798, 802 (8th Cir. 2005) ("A failure to follow a recommended course of treatment also weighs against a claimant's credibility.").  The ALJ also noted that, while Dr. Brown's May 2018 Consultation included the findings of a November 2013, neuropsychological evaluation with Dr. Thomas Misukanis (the "November 2013 Evaluation"), no test data from this evaluation was included in the record, and the results of this evaluation, as noted by Dr. Brown, yielded "'only mild cognitive dysfunction in a patient with emotional disturbance.'"  (Tr. 20, 452).

The ALJ also cited to and discussed treatment notes from Dr. Carrie Parente and Dr. David Sudduth, which the ALJ found did not support a diagnosis for neurocognitive disorder or a TBI.  Specifically, the ALJ noted that, during a July 2018, medication management follow-up with psychiatrist, Dr. Parente, Plaintiff was diagnosed with "'major' neurocognitive disorder due to TBI with behavioral disturbance"; however, the ALJ discounted this opinion, noting that this diagnosis was "entirely by history with no supportive testing," and that "this diagnosis was not carried forward for 12 continuous months."  (Tr. 20, 472-479); see Papesh, 786 F. 3d at 1132.  As for Dr. Sudduth, a psychiatrist who continued to treat Plaintiff for medication management, the ALJ noted

10

that, while Plaintiff was diagnosed with "chronic problems with executive function secondary to [TBI] in 1989 and 1992, with 'frontal lobe damage,'" there still lacked no supporting documentation to support this diagnosis, such as brain imaging findings, and this diagnosis "appeared to be based solely on the reported history provided by [Plaintiff]." (Tr. 20, 583-585); see Papesh, 786 F.3d at 1132. Therefore, upon reviewing these records, the ALJ determined that, "[w]ithout a supported neurocognitive disorder diagnosis, the reported history of [TBI was] not presently established as a medically determinable impairment given the absence of a currently supported residual mental or physical diagnosis." (Tr. 20) (emphasis added).

Accordingly, to the extent Plaintiff argues that the ALJ improperly considered the November 2018 Opinion as the only evidence to support his finding that Plaintiff lacked a current, severe TBI impairment, this is simply untrue. The ALJ considered all of Plaintiff's medical records in the context of Plaintiff's alleged TBI impairment, and the records cited by the ALJ supported his determination that Plaintiff did not have a supported neurocognitive disorder diagnosis and her alleged TBI was not a severe impairment. Here, Plaintiff simply asks the Court to reweigh the evidence that the ALJ considered and come to a different conclusion than the ALJ; this the Court cannot do.[5] See Milam v. Colvin, 794 F.3d 978, 983 (8th Cir. 2015); Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993).

---

[5] To the extent Plaintiff asserts that the ALJ erred in his RFC determination by relying on the November 2018 Opinion, or alternatively, argues that the ALJ cannot rely on the November 2018 Opinion, the Court also finds these arguments unpersuasive. As is the case here, an ALJ may adopt the contrary medical opinion of a consulting physician, when the treating source's statements are conclusory, unsupported by medically acceptable clinical or diagnostic data, or when the ALJ's determination is justified by substantial evidence in the record, as a whole. See Rogers v. Chater, 118 F.3d 600, 602 (8th Cir. 1997); Ghant v. Bowen, 930 F.2d 633, 639 (8th Cir. 1991). The Court's review of the record shows that Dr. Warner used his expertise in formulating an opinion based on a review the complete record, Plaintiff's activities of daily living, and her overall ability to function. (Tr. 422-426). Therefore, as noted above, and as further discussed, supra, there is substantial evidence on the record to support the ALJ's decision in assigning Dr. Warner's opinion more weight. See Rogers, 118 F.3d at 602; Ghant, 930 F.2d at 639.

Plaintiff nevertheless argues that the ALJ failed to consider or mischaracterized Dr. Brown's May 2018 Consultation, which "reaffirmed [her] diagnosis of a TBI," after examining her and reviewing Dr. Misukanis' November 2013 Evaluation. However, nothing in Dr. Brown's notes confirmed that Plaintiff <u>currently</u> suffered from a TBI—any notes that she suffered a TBI were based on Plaintiff's reported history of injuries with associated subdural hematomas at ages 9 and 11.[6] (Tr. 453). Indeed, while "[a] patient's report of complaints, or history, is an essential diagnostic tool for any doctor when he or she is offering a medical opinion or diagnosis." <u>see</u> <u>Flanery v. Chater</u>, 112 F.3d 346, 350 (8th Cir.1997), an ALJ may nevertheless properly choose not to give controlling weight to the opinion of a treating physician opinion when it is based solely on a claimant's subjective reports. <u>See</u> <u>Papesh</u>, 786 F.3d at 1132. Such is the case here.

Further, as the ALJ noted, Plaintiff had not had testing since the November 2013 Evaluation, and with no test data in the record from this evaluation and no updated neuropsychological testing (which she was recommended to undergo, but failed to do so), Plaintiff's self-report of two TBIs when she was a child was insufficient to establish that, as an adult, she currently suffered from a severe TBI impairment. (Tr. 20); <u>see</u> <u>Kirby v. Astrue</u>, 500 F.3d 705, 707–08 (8th Cir. 2007) (holding that it is claimant's burden to establish that impairment is severe; if impairment has no more than minimal effect on claimant's ability to work, it does not qualify as severe).

Plaintiff next asserts that the November 2013 Evaluation supported a severe neurocognitive disorder, thereby supporting a current, severe TBI impairment, but the ALJ inaccurately summarized the evaluation's findings as showing "only mild cognitive dysfunction in a patient

---

[6] Specifically, Plaintiff reported to Dr. Brown that she suffered TBI several years ago with the first incident beginning at age 9 when "she was pushed from behind and struck the right temporoparietal region in the door." (Tr. 20, 451). Plaintiff also reported a second incident at age 11 where she slipped and struck the right side of her head, resulting in loss of consciousness. (Tr. 451).

with emotional disturbance." (Plf.'s Mem., [Docket No. 21], at p. 17). In making this argument, however, Plaintiff is merely highlighting selective evidence she believes favorable to her claim, and she asks this Court to reevaluate said evidence to reach a different conclusion than that of the ALJ when he considered that same evidence. For example, Plaintiff highlights other areas of Dr. Brown's notes where he indicated that Dr. Misukanis opined Plaintiff would be limited in her ability to work based on her impulsivity, disinhibition, and emotional dysregulation, and opined that the combination of Plaintiff's brain injury, ADHD, and personality factors significantly limited her abilities to maintain and obtain employment. (Id.). However, "opinions that a claimant is 'disabled' or 'unable to work' concern issues reserved to the Commissioner and are not the type of opinions which receive controlling weight." Vossen v. Astrue, 612 F.3d 1011, 1015 (8th Cir. 2010) (citing Ellis v. Barnhart, 392 F.3d 988, 994 (8th Cir. 2005)); see also SSR 96-5p (July 2, 1996) ("Giving controlling weight to [treating source] opinions would, in effect, confer upon the treating source the authority to make" disability determinations). Consequently, that portion of Dr. Misukanis' November 2013 Evaluation "gets no deference because it invades the province of the Commissioner to make the ultimate disability determination." Engquist v. Berryhill, No. 16-cv-3951 (TNL), 2018 WL 1413460, at *21 (D. Minn. Mar. 21, 2018) (quoting House v. Astrue, 500 F.3d 741, 745 (8th Cir. 2007)). Plaintiff also highlights portions of Dr. Misukanis' November 2013 Evaluation, which purportedly reflected cognitive deficits. However, Plaintiff's argument lacks any assertion that the ALJ failed to consider the evidence to which Plaintiff now points to. Indeed, Plaintiff does not seem to argue that there is any medical evidence in the record that the ALJ failed to consider that shows that Plaintiff currently suffered from a TBI or that her TBI impairment was currently severe.[7]

---

[7] Plaintiff alternatively contends that Dr. Misukanis' opinion that she suffered "mild cognitive dysfunction" is nevertheless a decline in cognitive functioning under SSA Listing 12.02 (Neurocognitive Disorders), which would

As noted above, the Court may not reverse the ALJ simply because substantial evidence supports an opposite conclusion.  See Milam, 794 F.3d at 983.  Nor can the Court substitute its own judgment or findings of fact for those of the ALJ, see Woolf, 3 F.3d at 1213, because the Court "must consider evidence that both supports and detracts from the ALJ's decision," and "must affirm the denial of benefits if 'it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings.'"  See Milam, 794 F.3d at 983 (citations omitted) (emphasis added).  Such is the present case now before the Court.

Plaintiff is essentially arguing that there is also substantial evidence in the record that also supports the opposite finding of disability. However, as already noted above, if it is possible to reach two inconsistent positions from the evidence and one of those positions represents the decision of the ALJ, then the Court must affirm the decision.  See Robinson, 956 F.2d at 838; Bradley, 528 F.3d at 1115; Medhaug v. Astrue, 578 F.3d 805, 813 (8th Cir. 2009). Although Plaintiff may perceive evidence in the record which supports a finding in her favor, the record now before the Court when considered as a whole also contains substantial evidence which supports that ALJ's decision, and therefore, the Court must affirm the ALJ's decision.  See Robinson, 956 F.2d at 838; Bradley, 528 F.3d at 1115; Medhaug, 578 F.3d at 813. "The fact that there was some medical evidence supporting [Plaintiff's] position concerning the severity of her symptoms does

---

impact Plaintiff's ability to complete basic work activities.  Under SSA Listing 12.02, a claimant does not meet the requirements unless the evidence shows both a significant loss in cognitive ability and evidence of at least two of the following manifestations: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; or (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.02(B).  Here, an opinion that Plaintiff suffered from "mild cognitive dysfunction" five years ago may indicate cognitive impairments then, but the ALJ found that substantial evidence in the record supports the conclusion that Plaintiff does not currently have marked limitations in her daily activities, in concentrating, or in social functioning,.  The Court agrees. Indeed, the ALJ found that the evidence supported mild or moderate limitations in those areas at most, insofar that they were present.  (Tr. 22-23).  As noted above, the burden of proof is on the Plaintiff to establish that her impairment meets or equals a listing, and to meet a listing, an impairment must meet all of the listing's specified criteria. See Sullivan, 493 U.S. at 530 ("An impairment that manifests only some of these criteria, no matter how severely, does not qualify.").

not mean that the ALJ's decision was not supported by substantial evidence." <u>Adamczyk v. Saul</u>, 817 F. App'x 287, 290 (8th Cir. 2020) (citing <u>Fentress v. Berryhill</u>, 854 F.3d 1016, 1021 (8th Cir. 2017)).

### B.  Dr. Carrie Parente, M.D.

Plaintiff argues that the ALJ improperly weighed Dr. Carrie Parente's opinion. (Plf.'s Mem., [Docket No. 21], at pp. 18-24).  "[A] treating physician's opinion is given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." <u>Dolph v. Barnhart</u>, 308 F.3d 876, 878 (8th Cir. 2002) (internal quotation marks omitted).  However, a treating physician's opinion "do[es] not automatically control, since the record must be evaluated as a whole." <u>Bentley v. Shalala</u>, 52 F.3d 784, 786 (8th Cir. 1995).

The Eighth Circuit has held that an ALJ may properly choose not to give controlling weight to the opinion of a treating physician opinion when it is based solely on a claimant's subjective reports, or when the opinion is inconsistent with the treating physician's own treatment notes. <u>Papesh</u>, 786 F.3d at 1132.  Even when a treating physician's opinion is not entitled to controlling weight, the opinion is typically entitled to substantial weight, and should not ordinarily be disregarded without good reason.  <u>Miller v. Colvin</u>, 784 F.3d 472, 477 (8th Cir. 2015).

However, an ALJ may properly choose to give the opinion of a treating physician no weight when it is inconsistent with the overall evidence in the medical record.  <u>Papesh</u>, 786 F.3d at 1132. Further, "an ALJ may discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." <u>Miller</u>, 784 F.3d at 477 (quoting <u>Wildman v. Astrue</u>, 596 F.3d 959, 964 (8th Cir. 2010)).  A treating

physician's opinion "on the issue(s) of the nature and severity" of an impairment is given controlling weight when it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the case. 20 C.F.R. § 404.1527(c)(2).

As noted above, an ALJ may also discount or even disregard a treating physician's medical opinion and adopt the contrary medical opinion of a consulting physician, when the treating source's statements are conclusory, unsupported by medically acceptable clinical or diagnostic data, or when the ALJ's determination is justified by substantial evidence in the record, as a whole. See Rogers v. Chater, 118 F.3d 600, 602 (8th Cir. 1997); Ghant v. Bowen, 930 F.2d 633, 639 (8th Cir. 1991).

In other words, the ALJ is not required to believe the opinion of a treating physician when, on balance, the medical evidence convinces her otherwise. See Wagner, 499 F.3d at 849. Moreover, "opinions that a claimant is 'disabled' or 'unable to work' concern issues reserved to the Commissioner and are not the type of opinions which receive controlling weight." Vossen, 612 F.3d at 1015 (citing Ellis, 392 F.3d at 994); see also SSR 96-5p, 1996 WL 374183, at *2 (July 2, 1996). When an ALJ chooses not to give controlling weight to the opinion of a treating physician, the regulations require that they explain their reasons for doing so. See 20 C.F.R. § 404.1527(c)(2).

Here, Dr. Parente is a "treating source" because she is a doctor that treated Plaintiff. See Lacroix v. Barnhart, 465 F.3d 881, 885-86 (8th Cir. 2006) (quoting 20 C.F.R. §§ 404.152, 416.902) ("A 'treating source' is defined as a 'physician, psychologist, or other acceptable medical source' who treats the claimant."). Dr. Parente offered an opinion in August 2018, regarding Plaintiff's mental impairments (the "August 2018" Opinion"). (Tr. 417-419). Dr. Parente opined by

16

checking boxes that Plaintiff had marked limitations in her ability to understand, remember, and carry out short, simple instructions. (Tr. 417). Dr. Parente also opined by checking boxes that Plaintiff had extreme limitations in her ability to understand, remember, and carry out detailed instructions and make judgments on simple work-related decisions. (Tr. 417). In support of her checked boxes, Dr. Parente provided that Plaintiff had "well documented [TBIs] as child (8/9 yrs and 11 y.o.) that [had] left her with severely impaired executive functioning abilities that [were] improved with medication in a very limited fashion." (Tr. 417). Dr. Parente also provided that Plaintiff had "severe, consistent difficulty following instructions, doing classwork [and] performing job duties that has negatively impacted all areas of her life." (Tr. 417).

Dr. Parente further opined by checking boxes that Plaintiff had extreme limitations in her ability to interact appropriately with the public, supervisors, co-workers, and respond appropriately to work pressures in usual work setting and to changes in a routine work setting. (Tr. 418). In support of this assessment, Dr. Parente provided that Plaintiff had been "repeatedly loud, disruptive, verbally abusive and emotionally d[y]sregulated while dealing with all personnel at this clinic." (Tr. 418). Dr. Parente provided that, while Plaintiff had some success in controlling her behaviors for very limited amount of time with strict and structured rules, it was her understanding that Plaintiff exhibited similar behaviors in all aspects of her life. (Tr. 418). Further, Dr. Parente provided that Plaintiff was only able to focus for one to two hours at a time with medication, but that she nevertheless showed poor self-control and lack of insight into how her behaviors affected her interactions with others. (Tr. 418). Dr. Parente also opined that Plaintiff's recent substance abuse impaired her ability to regulate herself, think clearly, and make informed decisions, but that these impairments were present even before she began abusing substances. (Tr. 418).

Lastly, Dr. Parente opined that Plaintiff had demonstrated that she could not manage benefits in her own interests because she was currently homeless, has had "many, many, jobs over the years," and is emotionally dysregulated, which is unlikely to change significantly "given physiological etiology of her disability." (Tr. 419).

After acknowledging that Dr. Parente was Plaintiff's psychiatrist, the ALJ determined that Dr. Parente's August 2018 Opinion was unpersuasive for several reasons. The ALJ found that Dr. Parente's opinion as to Plaintiff's mental impairments being "all present" and "severely disabling" even without substance abuse, was at odds with the records, which showed that, at the time she provided the August 2018 Opinion, Dr. Parente had only begun treating Plaintiff for four months (in May 2018), and Plaintiff's abuse of methamphetamines and lack of stimulant medication had occurred even before Dr. Parente began treating her (since March 2018). (Tr. 26). Further, the ALJ determined that the August 2018 Opinion, was not supported by Plaintiff's mental health treatment records because those records did not document or support extreme limitations in the above abilities for an ongoing 12-month period, but instead documented improved mental status findings beginning in September 2018—after Plaintiff was using stimulant medication "at her desired dosage," and not abusing methamphetamines. (Tr. 26, 455-516, 583-613). Moreover, the ALJ determined that the August 2018 Opinion was not based on Dr. Parente's objective findings and "did not clearly identify any supported mental medically determinable impairments," but her opinion was based largely on Plaintiff's self-reported history of TBIs from two childhood incidents and emotional dysregulation issues when dealing with the medical staff at her clinic. (Tr. 26-27). The ALJ also noted that Dr. Parente's reference to "it is my understanding that" indicated to him that Dr. Parente was relying primarily, if not entirely, on Plaintiff's self-reports. (Tr. 27). The ALJ further discounted Dr. Parente's August 2018 Opinion because he found it was internally

inconsistent with Dr. Parente's own exam findings, contradicted by Dr. Warner's November 2018 Opinion, and "generally at odds" with later treatment notes from Dr. Sudduth, her subsequent psychiatrist. (Tr. 27).

This Court's review of the record as a whole indicates that the ALJ's stated reasons for discounting the August 2018 Opinion accurately reflects the record and constitutes proper reasons for discounting said opinion. For example, the ALJ found that the high level of functional limitations opined by Dr. Parente were inconsistent with her own treatment notes. (Tr. 20). See Miller, 784 F.3d at 477 ("[A]n ALJ may discount or even disregard the opinion of a treating physician where a treating physician renders inconsistent opinions that undermine the credibility of such opinions."). At her May 2018 intake appointment with Dr. Parente, Plaintiff presented herself casually groomed, with loud, rapid, agitated, impulsive, and hyperactive speech, but she was also found to be cooperative and maintaining good eye contact. (Tr. 496-501). At a follow-up appointment in June 2018, Plaintiff was noted as being very agitated, loud, disruptive, abusive towards staff at the clinic, and arriving late for her appointment, but Dr. Parente also noted that, after Plaintiff was explained the clinic's lateness policy and zero tolerance for abusive behavior, Plaintiff was able to calm herself. (Tr. 502-504). Plaintiff also admitted to Dr. Parente that she was "using more Dexedrine than prescribed . . . and used meth 2 days ago," reporting that "[s]he was not using meds or meth while at court and felt she was bouncing off the walls." (Tr. 503). As observed by the ALJ, during a psychiatry follow-up with Plaintiff in July 2018, Dr. Parente noted that, while Plaintiff appeared disheveled and her stated mood was "not great," Plaintiff maintained good eye contact, was respectful of boundaries, had organized thought process, had less loud and rapid speech than before, was only mildly difficult to interrupt, was able to modulate herself, used no profanity, and was respectful. (Tr. 27, 471). Dr. Parente also noted that, while Plaintiff was

upset because she needed some paperwork and reported being only able to see her son "6 times out of possible 39 visits," she was not loud or profane, was polite, and was thankful of Dr. Parente for prescriptions and for completing requested paperwork. (Tr. 471-472). Dr. Parente's treatment notes also indicate that, during a September 2018 follow-up, Plaintiff was observed to have good eye contact, organized tangential thought process, and intact memory with no changes to her medication required because Plaintiff reported they were currently helping her to concentrate, focus, and complete tasks. (Tr. 490-492); see Brown v. Astrue, 611 F.3d 941, 955 (8th Cir. 2010) (quoting Brace v. Astrue, 578 F.3d 882, 885 (8th Cir. 2009)) ("If an impairment can be controlled by treatment or medication, it cannot be considered disabling."); see also Hill v. Colvin, 753 F.3d 798, 800 (8th Cir. 2014).

Furthermore, Plaintiff's activities conflict with the extreme limitations opined by Dr. Parente. Specifically, the ALJ noted that Plaintiff uses public transportation, goes shopping, sings karaoke at a venue, goes out to the movies, to eat, or to concerts, and at one point, traveled to Michigan with a friend. (Tr. 22) see e.g., Lawrence v. Chater, 107 F.3d 674, 676 (8th Cir. 1997) (finding that the claimant's ability to "dress and bathe herself," and "do homework, cooking, and shopping" contradicted her "testimony regarding the severity of her. . . disability."). Plaintiff's ability to complete these activities is supported by the record. See Adult Function Report, Tr. 310-317 (reporting being able to do laundry, clean the litter box, shopping for food, toilet paper, soap, laundry, and detergent, counting change, using checkbook/money orders, singing karaoke, finding new music on YouTube, and not going outside because she does not have the money and no working vehicle); Tr. 612 (reporting going to Michigan with a friend). At the July 14, 2020, Hearing before the ALJ, Plaintiff reported that she arranges for transportation to go the grocery

20

store and to obtain prescriptions; she "spends her sweet time" at the store because she feels lonely and trapped in her house; and she uses the Internet and enjoys listening to music. (Tr. 65-68).

Other records also conflict with Dr. Parente's opinions. For example, from May 2019 to January 2020, during follow-up medication management sessions with her subsequent psychiatrist, Dr. Sudduth, Plaintiff was noted to have no impairments in her daily living skills and behavior, intact memory, cooperative and friendly attitude, and overall improving symptoms while on her prescription medication and no substance abuse. (Tr. 583-598). Dr. Sudduth's treatment notes also indicate that Plaintiff's mental functioning was improving with medication. See Brown, 611 F.3d at 955; (Tr. 587) ("She is more able to concentrate on the amphetamine. . ."); (Tr. 590) ("She is doing well on her present medication but does best if she only gets a week at a time"); (Tr. 593) ("She is doing better. She likes living in her own apartment. She is doing ok with her son."); (Tr. 596) ("She does well on the amphetamines for her ADD."). Dr. Parente's opinions were also inconsistent with Dr. Warner's November 2018 Opinion, which did not find extreme limitations in her mental functioning, as discussed, supra. (Tr. 422-426).

In addition, the Court notes that Dr. Parente's August 2018 Opinion consists entirely of vague, conclusory statements, checked boxes, and fill-in-the-blank answers. "[A] conclusory checkbox form has little evidentiary value when it 'cites no medical evidence, and provides little to no elaboration.'" Anderson v. Astrue, 696 F.3d 790, 794 (8th Cir. 2012) (quoting Wildman, 596 F.3d at 964). Accordingly, an ALJ may properly discount the opinion of a treating provider that is conclusory or unsupported and contradicted by other evidence in the record. See Rogers, 118 F.3d at 602; Ghant, 930 F.2d at 639.

Therefore, for the reasons mentioned above, this Court finds that the ALJ's decision to discount Dr. Parente's August 2018 Opinion was supported by substantial evidence in the record.

As such, it was not error for the ALJ to find unpersuasive Dr. Parente's form opinion of Plaintiff's extreme mental limitations. Because the ALJ had a proper basis to discount her conclusory opinions, the ALJ's decision to give lesser weight to her opinion was within the available zone of choice. Robinson, 956 F.2d at 838; Bradley, 528 F.3d at 1115. The ALJ did ultimately accommodate Plaintiff's mental impairments by reducing her to "simple, routine and repetitive tasks, with no fast production rate pays, occasional changes in routine work duties, brief and superficial contact with coworkers and supervisors, and no public contact." (Tr. 26). As noted above, in making this RFC determination, "[t]he ALJ was entitled to consider all of the evidence in the record." Vandenboom v. Barnhart, 421 F.3d 745, 750 (8th Cir. 2005); see also Stormo v. Barnhart, 377 F.3d 801, 807 (8th Cir. 2004) ("The ALJ should consider all evidence in the record . . . ." (quotations omitted)).

Plaintiff nevertheless points to several purported inaccuracies in the record and assumptions made by the ALJ. For example, Plaintiff asserts that the ALJ inaccurately assessed Plaintiff's mental impairment as having had improved during treatment with Dr. Parente. (Plf.'s Mem., [Docket No. 21], at pp. 19-20). However, as noted above, while Plaintiff's progress was noted as "unchanged" in September 2018 (after five months of treatment), Dr. Parente did note an improvement in her behavior and motor activities, with organized thought process and intact memory, as well as, no medication changes were made because Plaintiff reported that the medication was helping her concentrate, focus, and complete tasks. (Tr. 462, 471, 488).

In sum, similar to Plaintiff's argument regarding the purported severity of her TBI impairment, supra, Plaintiff is essentially asking this Court to reweigh the whole of the medical evidence and to come to a different conclusion than the ALJ, which this the court cannot do. See Milam, 794 F.3d at 983; Woolf, 3 F.3d at 1213. To the extent Plaintiff argues that there was also

substantial evidence in the record that might have supported giving Dr. Parente's opinions more weight, as already pointed out, this Court may not reverse the ALJ simply because substantial evidence exists to support an opposite conclusion. See <u>Milam</u>, 794 F.3d at 983. Nor can this Court substitute its own judgment or findings of fact for those of the ALJ. See <u>Woolf</u>, 3 F.3d at 1213. The Court "must consider evidence that both supports and detracts from the ALJ's decision," and it "must affirm the denial of benefits if 'it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings.'" See <u>Milam</u>, 794 F.3d at 983 (citations omitted) (emphasis added).

Therefore, this Court finds Plaintiff's argument that the ALJ's RFC determination is not supported by substantial evidence because the ALJ improperly discounted the opinion of Dr. Parente is unpersuasive in light of the record as a whole.

**V. Conclusion**

The Court's review of the record, as a whole, indicates that the ultimate decision that Plaintiff was not disabled as defined by the Social Security Administration Act during the adjudicated period was supported by substantial evidence in the record.

Specifically, on the Court's review of the record, as a whole, the ALJ's decision to discount Plaintiff's subjective complaints, his RFC determination, and his decision that jobs existed in significant numbers in the national economy, which Plaintiff could perform within the RFC determination, were each supported by substantial evidence in the record.

Therefore, based on the foregoing, and all the files, records, and proceedings herein, the Court **HEREBY RECOMMENDS THAT**:

1.  Plaintiff's Motion for Summary Judgment, [Docket No. 20], be **DENIED**;

2.  Defendant's Motion for Summary Judgment, [Docket No. 22], be **GRANTED**; and

3.  This present case be **DISMISSED with prejudice**.

Dated:  July 27, 2022                                    s/Leo I. Brisbois
                                                         Hon. Leo I. Brisbois
                                                         United States Magistrate Judge

## <u>NOTICE</u>

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).